UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Eugene Franzwa,

                     Plaintiff,

    vs.

City of Hackensack,
Erick Hedren, Larry Ciha,
and Ron Johnston,

                    Defendants.        Civ. No. 06-3739 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion for Summary Judgment. A Hearing on the Motion was conducted on January 31, 2008, at which time, the Plaintiff appeared by Michael C. Mahoney, Esq., and the Defendants appeared by Pierre N. Regnier, Esq. For reasons which follow, we recommend that the Defendants' Motion be granted.

## II.  Factual and Procedural Background

This is an action brought under Title 42 U.S.C. §1983 by a member of the City Council (the "Council") of the City of Hackensack, Minnesota (the "City"), who claims that his constitutional rights were violated when he was removed from his position on the Council based upon allegations that he was not a resident of the City. See, Complaint, Docket No. 1.  In addition to his constitutional claims, the Plaintiff alleges that he was defamed by Erick Hedren ("Hedren"), who is the Mayor of the City, and by Council members Larry Ciha ("Ciha"), and Ron Johnston ("Johnston") (collectively, the "Individual Defendants"), in retaliation for his political views, and that the Individual Defendants violated an "Open Meeting Law" by holding secret meetings to discuss the removal of the Plaintiff from office.

According to the Plaintiff's Complaint, although he has always maintained a legal residence in the City, in May of 2005, he purchased a second residence in Mountain Home, Arkansas, which was erroneously classified as his "homestead" by the authorities in Baxter County, Arkansas.  Id. at ¶¶13-16.  The Plaintiff claims that, in April of 2006, the Defendants discussed using the Plaintiff's Arkansas homestead as a pretext for his removal from the Council, id. at ¶¶21-22, and intentionally failed

to investigate allegations that had been made concerning the homestead status of the Plaintiff's Arkansas residence.  Id. at ¶¶27-36.

The Complaint further alleges that, at a Council meeting on May 1, 2006, Hedren falsely accused the Plaintiff of violating the law, by serving on the Council while failing to maintain a household in the City, and that the Council voted to remove the Plaintiff as a member, based upon its belief that he was not a legal resident of the City.[1]  Id. at ¶¶20, 38-39.  According to the Plaintiff, Hedren and the other Defendants also made defamatory statements, concerning the Plaintiff, to the local news media, and further defamed him by removing him from his position on the Council.  Id. at ¶¶45-50.  The Plaintiff was eventually returned to his seat on the Council, after he challenged his removal.  Id. at ¶51.

On August 27, 2007, the Plaintiff brought a Motion to Amend his Complaint in order to seek punitive damages, see, Docket No. 11, which we denied by Order dated January 2, 2008, see, Docket No. 40, and that decision was affirmed by Order of the District Court, the Honorable John R. Tunheim presiding, dated April 17, 2008. See, Docket No. 55.

---

[1]Under Minnesota law, to serve as an elected official of a city, the elected official must live within that city.  See, Minnesota Statutes Section 351.02(4).

On November 11, 2007, the Defendants filed a Motion for Summary Judgment, see, <u>Docket No. 24</u>, which the Plaintiff opposes.

### III.  <u>Discussion</u>

A.      <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of</u>

Minnesota/South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 1004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003)

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." <u>Celotex Corp. v. Catrett</u>, supra at 323; see also, <u>Sallis v. University of Minnesota</u>, 408 F.3d 470, 474 (8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

B.    <u>Legal Analysis</u>.    The Defendants seek Summary Judgment on all of the Plaintiff's claims.  We address each claim separately.

1.    <u>The Plaintiff's Section 1983 Claims</u>.   In his Complaint, the Plaintiff alleges violations of his rights under the First, Fifth, and Fourteenth Amendments.  In his responsive Memorandum, the Plaintiff explains that he is not alleging an Equal Protection violation,[2] but argues that he had a property right to remain on the Council, and that the Defendants violated his right to Due Process by holding a Hearing on his termination without affording him prior notice.  In addition, the Plaintiff claims that, as a result of his suspension from the Council, he was deprived of his First Amendment right of free speech, and association, as an elected official.

---

[2]In paragraphs 60 and 61 of his Complaint, see, <u>Docket No. 1</u>, at p. 8, the Plaintiff does allege an equal protection of the laws claim against the Defendants.  Given his abandonment of that claim, we recommend that Summary Judgment be granted on the claim as it is now moot.

a.   <u>Due Process</u>.   The Defendants argue that Summary Judgment is appropriate since the Plaintiff cannot establish a violation of his Due Process rights for the following reasons:  1) because he has an adequate remedy under State law; 2) because he did not have a property right to serve as an elected official; 3) because he was given notice and an opportunity to rebut the allegations against him; and 4) because the Defendants' actions did not "shock the conscience," or cause any injury to the Plaintiff.

The Defendants argue, first, that the Plaintiff had an adequate remedy under State law, and that, therefore, the Court lacks jurisdiction to hear his Due Process claim.   Specifically, the Defendants claim that, pursuant to the <u>Parratt/Hudson</u> doctrine, any adverse Council decisions must first be challenged in a State District Court through a <u>Quo Warranto</u> proceeding, or through a Writ of Prohibition.

In <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984), the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  See also, <u>Parratt v. Taylor</u>, 451 U.S. 527, 538-44 (1981), overruled on other grounds, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).  Our Court of Appeals has

observed that the Parratt/Hudson doctrine applies to both procedural and substantive due process claims. See, Ali v. Ramsdell, 423 F.3d 810, 814 (8th Cir. 2005); see also, Skinner v. Missouri, 215 Fed.Appx. 555 (8th Cir. 2007); Weimer v. Amen, 870 F.2d 1400, 1406 (8th Cir. 1989).

In response to the Defendants' claim, that the Plaintiff should not be permitted to bring a Due Process claim before this Court, without first challenging the Council's decision before a Minnesota District Court through a Quo Warranto proceeding, or by seeking a Writ of Prohibition, the Plaintiff argues that the State's post-deprivation remedies, which were available to him here, are inadequate. "The writ of quo warranto is a special proceeding designed to correct the unauthorized assumption or exercise of power by a public official or corporate officer." State ex rel. Sviggum v. Hanson, 732 N.W.2d 312, 318 (Minn.App. 2007), citing State ex rel. Danielson v. Village of Mound, 48 N.W.2d 855, 863 (Minn. 1951); see also, Rice v. Connolly, 488 N.W.2d 241, 244 (Minn. 1992)(reinstating the Writ of Quo Warranto); State ex rel. Burnquist v. Village of North Pole, 6 N.W.2d 458, 461 (Minn. 1942)(Writ of Quo Warranto requires an official to justify a challenged action before a Court of competent jurisdiction).

Such a Writ essentially asks "by what right" the public authority acted.  See, State ex rel. Danielson v. Villiage of Mound, supra at 863.  In the case cited by the Defendants, in support of their claim that a Writ of Quo Warranto would be an appropriate remedy for the Plaintiff -- State v. Hays, 117 N.W. 615, 616 (1908) -- the Court held that the Writ was available to compel the removal of an official who was found to be improperly holding office, but was not contemplated as a means to protect or restore an official to office.  Moreover, the Plaintiff has not challenged the authority of the Council to remove him from his position, but rather, he claims that the Council members failed to follow the proper pre-removal procedure.  Thus, a Quo Warranto proceeding would not provide the Plaintiff with the relief that he now seeks.

As for the Writ of Prohibition, it is "an extraordinary remedy that may be issued if: 1) an inferior court or tribunal [is] about to exercise judicial or quasi-judicial power; 2) the exercise of such power [is] unauthorized by law; and 3) the exercise of such power [will] result in injury for which there is no adequate remedy."  State v. Deal, 740 N.W.2d 755, 769 (Minn. 2007), citing Minneapolis Star & Tribune Co. v. Schumacher, 392 N.W.2d 197 (Minn. 1986).  State Courts have issued such a Writ in cases where a Court has ordered the production of evidence that is not clearly discoverable, and the party has no adequate remedy at law, so as to prevent an abuse

of discretion, to settle a rule of practice that will govern all litigants, or to correct a lower Court's error of law.  Id. [citing cases].

In support of their argument that the Plaintiff should have sought a Writ of Prohibition, the Defendants cite State v. Thompson, 97 N.W.887 (Minn. 1904). There, however, the Writ was sought, and ultimately granted, to challenge the authority of a city council, absent statutory authorization, to remove a mayor.  Id. at 887.  In contrast, here, the parties agree that the Council had the authority to remove the Plaintiff, but they disagree over the manner in which that removal was effected, and consequently, the Plaintiff could not have sought such a Writ.  As neither of the remedies proposed by the Defendants would have provided the Plaintiff with adequate post-deprivation relief, the Defendants' argument, that the Plaintiff's Section 1983 claim is barred by the Parratt/Hudson doctrine, fails and we conclude that we have jurisdiction to hear the Plaintiff's Due Process claims.

Turning to those claims, the Plaintiff alleges, first, that his right to procedural due process was violated when he was deprived of his property interest in his position on the Council.  In determining whether there has been a deprivation of due process rights, a Court's first step is to determine whether there is a recognizable liberty or

property interest at stake.[3]  See, <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 571 (1972).  Only if that threshold question is answered in the affirmative, do we then inquire as to whether the procedures attendant to that deprivation were constitutionally sufficient.  See, <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989).

"A protected property interest * * * is a 'legitimate claim of entitlement * * * as opposed to a mere subjective expectancy.'"  <u>Bituminous Materials, Inc. v. Rice County, Minnesota</u>, 126 F.3d 1068, 1070 (8th Cir. 1997), quoting <u>Batra v. Board of Regents of the University of Nebraska</u>, 79 F.3d 717, 720 (8th Cir. 1996), quoting, in turn, <u>Board of Regents of State Colleges v. Roth</u>, supra at 577.  "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law.'"  <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 540 (1985),

_____

[3]We note that, based upon his Complaint, and his argument at the Hearing, the Plaintiff no longer pursues a due process claim that arises from a liberty interest.  See, <u>Winskowski v. City of St. Stephen</u>, 442 F.3d 1107, 1109-10 (8th Cir. 2006)("An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges."), cert. denied, --- U.S. ---, 127 S.Ct. 435 (2006), quoting <u>Winegar v. Des Moines Indep. Cmty. Sch. Dist.</u>, 20 F.3d 895, 900 (8th Cir. 1994).  As a result, we confine our analysis of the Plaintiff's due process claim to his argument that he has been deprived of a property interest.

- 11 -

quoting Board of Regents of State Colleges v. Roth, supra at 577. However, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 757 (2005), quoting Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 9 (1978)[emphasis omitted].

"A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it." Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994), cert. denied, 513 U.S. 964 (1994). The property interest is determined with reference to State law, and generally stems from contractual or statutory limitations on the employer's ability to terminate an employee. Id., citing Bishop v. Wood, 426 U.S. 341, 344 (1976). In Taylor v. Beckham, 178 U.S. 548, 576-77 (1900), the Supreme Court noted that "[t]he view that public office is not property has been generally entertained in this country," and the fact that a statute or legislation may forbid the legislature from abolishing a public office, or reducing its salary, does not make such a position property. See also, Snowden v. Hughes, 321 U.S. 1, 7 (1944); Velez v. Levy, 401 F.3d 75, 85-87 (2d Cir. 2005), citing cases; Sherer v. Carlson, 141 F.3d 1179 at *1 (9th Cir. 1998)[Table Decision]; cf., Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979). The Plaintiff concedes that "[t]here is no

- 12 -

constitutional right to be elected to a particular office," <u>Parks v. City of Horseshoe</u>, 480 F.3d 837, 840 (8th Cir. 2007), however, he claims that he had a property interest in **retaining** his position on the Council once he was elected, that was created by his statutory right to a pre-removal Hearing from that position.

In support of his position, the Plaintiff cites <u>Cleveland Board of Education v. Loudermill</u>, supra, and alleges that, like the employees in that case, he has a property interest in his position on the Council that was conferred by a statutory guarantee of a pre-termination Hearing.   However, that is a misreading of the holding in <u>Loudermill</u>, supra at 539-541, in which the Supreme Court found that the plaintiff school district employees had been given a property interest in their positions by a State statute which provided that they could only be terminated for cause, and that the legislature could not authorize the deprivation of that property interest without providing for appropriate procedural safeguards, such as notice and a pre-termination Hearing.

Unlike the <u>Loudermill</u> civil servants, the Plaintiff is not a public employee, but is an elected official, and he has no statutory guarantee of continued employment absent cause for his termination, that would give rise to a property interest.  Although Minnesota Statutes Section 351.02(4) does provide that the office of a public official

- 13 -

becomes vacant when the incumbent ceases to be a resident of the city for which he was elected, the Section does not set forth any statutory protection that would support the Plaintiff's argument concerning a property right in his position, and the Handbook for Minnesota Cities likewise provides only that the "[r]esidence [of a council member] is a factual question that the council must determine in each case," but does not set forth any procedural guidelines for that determination.  See, <u>Affidavit of Porten</u>, supra at Exhibit 4.  Moreover, Minnesota Statutes Section 412.191 provides that a city council "shall be the judge of the election and qualification of its own members," and "shall have the power to regulate its own procedure."

Although we find that the Plaintiff did not have a property interest in his position on the Council, even if he had, we would find that he was afforded procedural due process by the actions that the Defendants took.  Procedural due process requires that the Government provide fair procedures to give its citizens an opportunity to prevent a loss of life, liberty, or property.  See, <u>Birkenholtz v. Sluyter</u>, 857 F.2d 1214, 1216 (8th Cir. 1988), citing <u>Hurtado v. California</u>, 110 U.S. 516, 531 (1884).  "'In a procedural due process claim, it is not the deprivation of property or liberty which is unconstitutional; it is the deprivation of property or liberty **without due process of law** -- without adequate procedures.'"  <u>Id.</u>, quoting <u>Daniels v. Williams</u>, 474 U.S. 327,

339 (1986)(Stevens, J., concurring)[emphasis in original]. The Plaintiff argues that he was denied due process during the Council meeting on May 1, 2006, because he was first presented with the Defendants' assertion, that he had given up residency in Minnesota, a half-hour before the start of that meeting, and was not provided with an opportunity to view the evidence against him, to respond in writing with rebuttal evidence, or to present evidence at a second Hearing, prior to his removal from the Council.  See, Plaintiff's Memorandum, Docket No. 32, at pp. 17-18.

However, as the Plaintiff admits, he was allowed to speak on his own behalf at the Council meeting on May 1, 2006, and his ability to defend himself was not cut short by any of the Defendants.  See, Affidavit of Jessica E. Schwie ("Schwie"), Docket No. 27, Deposition of Eugene Franzwa ("Franzwa"), Exhibit A, at pages 159-163.  Moreover, it is firmly established that notice of charges, and evidence contemporaneous with a pre-termination Hearing, is sufficient to satisfy due process requirements.  See, Cleveland Board of Education v. Loudermill, supra at 546 ("The essential requirements of due process * * * are notice and an opportunity to respond."); Winskowski v. City of Stephen, 442 F.3d 1107, 1110 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S. Ct. 435 (2006), citing Coleman v. Reed, 147 F.3d 751, 754 (8th Cir. 1998).  The Court in Loudermill, supra at 546-47, based its decision, in part,

- 15 -

on the availability of a post-termination Hearing, and we note that, on May 18, 2006, following the Plaintiff's suspension or removal from office, he was given the opportunity to present evidence that he had retained his City residence at a Council meeting, with the result that he was reappointed to the Council on that date.

In essence, the Plaintiff argues that the initial Hearing on May 1, 2006, would have been **more fair** if he had received more advance notice, which would have allowed him to present evidence to rebut the claims against him at the time of the Hearing. However, he cites no case law which establishes that such a procedure is necessary to satisfy the requirements of due process, and those cases, that he does cite, support the Defendants' position that the notice provided to him was adequate. See, e.g., Goss v. Lopez, 419 U.S. 565, 582 (1975)(procedural due process rights of schoolchildren who are subject to disciplinary suspension are satisfied by notice at the time of the Hearing); Barry v. Barchi, 443 U.S. 55, 65 (1979)(affirming practice of suspending horse trainers' licenses after a post-race blood test reveals a trace of drugs when a post-suspension Hearing was available). Accordingly, we find no procedural due process violation.

The Plaintiff also claims that his substantive due process rights were violated by his removal from the Council. "'To establish a substantive due process claim, [a

- 16 -

plaintiff] must show that the government action was truly irrational, that is, something more than * * * arbitrary, capricious, or in violation of state law.'" <u>Graning v. Sherburne County</u>, 172 F.3d 611, 617 (8th Cir. 1999), quoting <u>Anderson v. Douglas County</u>, 4 F.3d 574, 577 (8th Cir. 1993), cert. denied, 510 U.S. 1113 (1994).   The government action in question must shock the conscience, or be otherwise offensive to notions of fairness and human dignity.   See, <u>Moran v. Clarke</u>, 296 F.3d 638, 647 (8th Cir. 2002); <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998).

The Supreme Court has held that, to meet the standard for a substantive due process violation, the conduct must be "intended to injure in some way unjustifiable by any governmental interest." <u>Norris v. Engels</u>, 494 F.3d 634, 638 (8th Cir. 2007), cert. denied, --- U.S. ---, 128 S.Ct. 1655 (2008), quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n. 8 (1998).   Here, the Plaintiff does not contest that the Defendants had the right to suspend a Council member who had been found to have given up his Minnesota residency, and that the Defendants had obtained at least some evidence that suggested that the Plaintiff had established a homestead in Arkansas. As a consequence, the Plaintiff contends that we should find the failure of the Council members to obtain definite proof of his alleged homestead status, prior to confronting

him at the meeting on May 1, 2006, or their failure to notify him of the allegations against him, prior to one half-hour before the meeting, to be "conscience shocking."

However, "the theory of substantive due process is properly reserved for truly egregious and extraordinary cases," Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992), quoting Myers v. Scott County, 868 F.2d 1017, 1019 (8th Cir. 1989), and the Plaintiff alleges merely negligent conduct on the part of the Defendants which, even if true, would not rise to the level of a due process violation. See, Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 672 (8th Cir. 2007)(allegations of negligence in an investigation "did not rise to the level of reckless that shocks the conscience"); James ex rel. James v. Friend, 458 F.3d 726, 730 (8th Cir. 2006)("Mere negligence or even recklessness by a public official is not enough to shock the judicial conscience."), citing S.S. v. McMullen, 225 F.3d 960, 964 (8th Cir. 2000); Lund v. Hennepin County, 427 F.3d 1123, 1126 (8th Cir. 2005).

In sum, since the Plaintiff does not have a property interest in his position as a Council member, and the Council did not violate the Plaintiff's rights to procedural or substantive due process, we recommend that the Defendants' Motion for Summary Judgment on the due process claims should be granted.

b.      <u>Free Speech and Association of an Elected Official</u>.  In his Complaint, the Plaintiff alleges that the Defendants removed him from office "in retaliation for [his] political views," which violated his right to free speech and association under the First Amendment.  <u>Complaint</u>, <u>Docket No. 1</u>, at p. 7, ¶50.  In his Memorandum, the Plaintiff clarifies his argument, and contends that he was denied the right to "vote and assemble freely" by the Defendants' decision to suspend or terminate his membership on the Council, and he specifically alleges that he was harmed by not having been able to present arguments, in support of the removal of the Police Chief, Mel Ratieke ("Ratieke"), at the Council meeting of May 1, 2006.

In support of his claim that a legislator's freedom of association is a constitutional right that is protected under the First Amendment, the Plaintiff cites <u>Camacho v. Brandon</u>, 317 F.3d 153 (2d Cir. 2003).  In <u>Comacho</u>, supra at 157-58, a legislative aide to a city council employee brought a Section 1983 action against the city council of Yonkers, New York, alleging that he was terminated in retaliation for votes that were cast by a member of the city council, and basing his claim on an exercise of that council member's First Amendment rights.  In considering his claim, the Court noted that, although choosing to affiliate oneself with a particular political party was protected by the First Amendment, "Courts that have examined First

- 19 -

Amendment retaliation claims made by publicly elected officials against other publicly elected officials on the basis of political affiliation have * * * found no First Amendment violation when the plaintiff was a policymaker." Id. at 161, citing Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 34 (1st Cir. 1996).

The Court noted that, in Elrod v. Burns, 427 U.S. 347, 375 (1976), and Branti v. Finkel, 445 U.S. 507, 517-18 (1980), the Supreme Court had held that a government employer can take an adverse employment action against an employee for actions that would otherwise be protected under the First Amendment, if that employee held a confidential or policymaking position for which political loyalty was necessary for effective job performance, and acknowledged that, although the city council member "[did] not represent the typical Elrod/Branti plaintiff," he was "a quintessential policymaker," and "the policy rationales articulated in [Elrod and Branti] permitting a government employer to punish an unelected employee based on his political affiliation are equally applicable -- if not stronger -- where an individual or entity exercising governmental powers seeks to retaliate against a publicly elected official based on the latter's votes and political affiliations." Id. at 162.

In a subsequent decision, Velez v. Levy, supra at 97, the Court clarified that its decision in Comancho was limited to situations in which the **employee** of a

- 20 -

policymaker was terminated for his political affiliations, as long as the policymaker himself "remained free to express his political views in the council chamber, to cast votes, and to serve his constituents in his capacity as a member of the council even after his assistant was terminated."   Specifically, the Court, in <u>Velez</u>, found that allowing a State official to "oust" an elected representative of the people on the basis of his views would be a violation of the First Amendment, and held that, rather than analyzing an elected representative's claim for removal from office for the exercise of his First Amendment rights under <u>Elrod/Branti</u>, such a claim was best understood to state a cause of action for retaliatory discharge.  <u>Id.</u> at 97-98.

As framed by the Court, in <u>Velez</u>, "in order to state a claim for [First Amendment"] retaliation under §1983, a plaintiff must show that (1) his actions were protected by the First Amendment; and (2) the defendant's alleged conduct was in response to that protected activity."  <u>Id.</u> at 97, citing <u>Friedl v. City of New York</u>, 210 F.3d 79, 85 (2nd Cir. 2000).  As related by the Court, "[w]e cannot permit a state official to oust an elected representative of the people on the bald ground that she voices unsympathetic political views -- that is, that she engages in an activity that is at the core of what is protected by the First Amendment."  <u>Id.</u>  Nonetheless, <u>Velez</u> is

distinguishable, since the "state official" who was responsible for the alleged First Amendment retaliation was an appointive, and not an elected official.[4]

Consistent with Velez, our Court of Appeals has observed that it is well established that "the First Amendment restrains the government from retaliating against a public employee based on the employee's speech or associations." Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008), citing Hughes v. Whitmer, 714 F.2d 1407, 1418 (8th Cir. 1983). However, as we have noted, the Plaintiff is not a "public employee," but is an elected official. Nonetheless, "[r]estrictions on an elected official's ability to perform [his] duties implicate the interests of two distinct parties: the individual's First Amendment associational rights * * * and the voters' rights to be meaningfully represented by their elected officials." Peeper v. Callaway County Ambulance Dist., 122 F.3d 619, 623 (8th Cir. 1997), cert. denied, 523 U.S. 1117 (1998). We find Peeper to be the closest decision bearing on the issues presented here. There, the plaintiff was a newly-elected member of an ambulance board of directors, whose husband was an emergency medical technician, and a

---

[4]Indeed, because the co-members of the school board, in Velez, were not directly responsible for the removal of the plaintiff from that board, and had not empowered the appointive official to do so, the Court found no First Amendment claim as alleged against the plaintiff's fellow board members. See, Velez v. Levy, 401 F.3d 75, 99 (2d Cir. 2005).

supervisor of the ambulance district, over whom the board had oversight responsibilities.  In view of what the board perceived as a conflict of interest, the other board members passed a resolution that limited the plaintiff's participation, as a member of the board, on a wide variety of topics.

The District Court had denied the plaintiff's claim, viewing the resolution as "content-neutral," and "narrowly tailored to meet the significant government interests of preventing the appearance of government corruption and promoting the effective functioning of the District," while leaving "open alternative channels of communication for the [plaintiff]."  Id. at 622.  The Court of Appeals disagreed, but only as to the breadth of the limitations imposed by the resolution, while recognizing that "[l]egitimate state interests may warrant restrictions that are de minimis limitations of the officials participation."  Id. at 623, citing Clements v. Fashing, 457 U.S. 957,972-73 (1981).  The Court ultimately concluded that, "[b]ecause provisions of the May resolution infringe upon Peeper's constitutional rights under the First and Fourteenth Amendments without being rationally related to a legitimate state interest, the May resolution cannot stand as written."  Id. at 624.

Under the analysis of Peeper, we can accept that the actions of the City Council members adversely impacted upon the Plaintiff's First Amendment interests, even

though those actions were not directed at any political content in the Plaintiff's speech as a Council member. While the Plaintiff suggests that his opposition to Police Chief Ratieke was a motivating factor for the Council's action, he does not present any evidence to support a causal relationship between that opposition, and the Council's action.[5] In fact, the Plaintiff acknowledges that Ratieke submitted his resignation at the Council meeting of May 1, and that it was unanimously accepted by the Council members. Moreover, there is no suggestion that, at the time of that Council meeting, the Plaintiff was not allowed to speak as to Ratieke's resignation, or to any other issue -- he simply left the meeting after the Council suspended his voting privileges.

As was the case in Peeper, the limitation of an elected official's participation in political or government activity necessarily implicates First Amendment rights. See, Peeper v. Calloway County Ambulance District, supra at 623 ("Restrictions on

---

[5]In support of his claim, the Plaintiff asserts that Ciha is friends with Ratieke, and that they "protect one another," Affidavit of Schwie, Exhibit A, at pages 116-18, that Johnston was "also part of the police problem," id. at page 119, and that Hedren "is very jealous" of Council members who do things for the City, as "he doesn't like competition." Id. at page 120. These accusations are conclusory, however, and are not supported by any supportive evidence. The Plaintiff does not temporally relate any statement or action he undertook to the actions of the City Council on May 1, 2006, nor do we find any other evidence to causally relate those actions to any political views that the Plaintiff has espoused. While the Plaintiff may speculate as to the motives of the Defendants, he has failed to substantiate his speculation with any competent evidence.

- 24 -

an officeholder after election also infringe upon voters' rights to be represented even more severely than when a state similarly restricts candidacy."). "Having determined that the [Council's] resolution injures [the plaintiff's] First and Fourteenth Amendment rights, we evaluate the state's purported interests and whether the restrictions rationally serve those interests." Id. at 623-24. Under the circumstances here, we find that they do.

The Defendants contend that, since they had evidence which established that the Plaintiff had a homestead in Arkansas, he was automatically disqualified from sitting as a Council member, and they believed that any vote that the Plaintiff was allowed to participate in could potentially be invalidated, should it be determined that the Plaintiff was, in fact, no longer a resident of the City. See, Affidavit of Schwie, supra at Exhibit B.  As noted by the Defendants, the Council is empowered to judge the qualifications of its members at an open meeting, see, Minnesota Statutes Section 412.191, Subdivision 2, and, at the time that the Plaintiff was suspended from the Council, the remaining Council members adopted an amendment which provided that, "if satisfactory papers are presented from Arkansas within the next 30 days, [the Plaintiff] would be reinstated without prejudice."  Id.; see also, Deposition of Johnston, Exhibit T, at pages 16-18.  The Defendants were presented with evidence,

which was unrefuted at that point, and which led the Defendants to conclude, albeit mistakenly, that the Plaintiff had given up his residency in the City by taking a homestead credit in Arkansas, and therefore, that the Plaintiff was no longer qualified to serve on the Council.

Aside from his conclusory allegations, the Plaintiff has not provided any evidence that undermines, at the relevant time, the rationale offered by the Defendant Council members for the action they took. His assertion, that some or all of the Defendants were negligent in their investigation of his homestead status in Arkansas, does not refute the legitimate justification, that is supported by evidence in the Record, for the Plaintiff's brief suspension from the Council. Moreover, when evidence was presented to the Council which refuted the legitimacy of the Plaintiff's suspension, the Council restored the Plaintiff to his full capacity as a Council member. Accordingly, we find no sustainable violation of the Plaintiff's First Amendment rights, and we recommend that the Defendants' Motion for Summary Judgment, as to that claim, be granted.

2.    The Plaintiff's Defamation Claim. The Plaintiff has also brought a State law claim for defamation against the Defendants, and argues that he was defamed by their decision to accuse him, at the public Council meeting on May 1,

2006, of unlawfully occupying his seat on the Council, and of doing so "in knowing

contravention of the law."  See, <u>Plaintiff's Memorandum</u>, supra at p. 23.  In addition,

the Plaintiff suggests that the act of removing him from the Council was itself

defamatory, as it "stood as confirmation of his guilt."[6]  <u>Id.</u>

"A statement is defamatory under Minnesota law if it is communicated to a

third party, is false, and tends to harm the plaintiff's reputation in the community."

<u>Aviation Charter, Inc. v. Aviation Research Group/ US</u>, 416 F.3d 864, 868 (8th Cir.

2005), citing <u>Graning v. Sherburne County</u>, 172 F.3d 611, 617 (8th Cir. 1999), citing,

in turn, <u>Stuempges v. Parke Davis Co.</u>, 297 N.W.2d 252, 255 (Minn. 1980); see also,

<u>Merchant Investment & Management Co., Inc. v. St. Anthony West Neighborhood</u>

<u>Organization</u>, 694 N.W.2d 92, 95 (Minn. App. 2005).

---

[6]In his Complaint, the Plaintiff also claims that he "is here forced to self-publish * * * false and misleading statements by Defendants to others, including disclosing the reasons for his termination from office."  See, <u>Complaint</u>, <u>Docket No. 1</u>, at ¶68. While self-publication can be grounds for a defamation claim, see, <u>Lewis v. Equitable Life Assurance Society of the United States</u>, 389 N.W.2d 876 (Minn. 1986)(adopting the doctrine of compelled self-publication), the Plaintiff's only claim appears to be that he felt that he was forced to publish false claims by bringing this lawsuit, which does not constitute self-publication.  We have found no case in which a plaintiff may bootstrap a self-publication claim on nothing more than his filing a Complaint against the alleged defamer, and we doubt that such a claim could exist.  Nonetheless, since we fail to find any actionable defamation, we do not further address the self-publication issue.

The Plaintiff, as a Council member, was a public official at all times relevant to his Complaint.  See, Chafoulias v. Peterson, 668 N.W.2d 642, 649 (Minn. 2003). In the landmark case of New York Times v. Sullivan, 376 U.S. 254, 280 (1964), the Supreme Court established a heightened "actual malice" standard for cases in which a public official claims defamation, which was subsequently extended to cases involving the alleged defamation of public figures, see, Curtis Publishing Company v. Butts, 388 U.S. 130, 155 (1967), and limited purpose public figures.  See, Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974).

The actual malice standard requires that a plaintiff demonstrate, by clear and convincing evidence, that the statement at issue was made "with knowledge that it was false or with reckless disregard of whether it was false or not."  New York Times v. Sullivan, supra at 280.  Minnesota Courts have clarified that actual malice "does not mean that the defendant acted with ill-will or spite."  Chafoulias v. Peterson, 668 N.W.2d 642, 654 (Minn. 2003), citing Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 665-67 (1989); see also, Moreno v. Crookston Times Printing Co., 610 N.W.2d 321, 329 (Minn. 2000)(noting that actual malice "has nothing to do with motive or ill will in the publishing of otherwise defamatory statements.").

- 28 -

Moreover, "[m]alice is more than mere negligence and 'probably even more than highly unreasonable conduct,'" Gohman v. Equifax Information Services, LLC, 395 F. Supp.2d 822, 829 (D. Minn. 2005), quoting Hirman v. Rogers, 257 N.W.2d 563, 566 (Minn. 1977), and "reckless disregard" requires "that a defendant make a statement while subjectively believing that the statement is probably false." Chafoulias v. Peterson, supra at 654-55, quoting Hirman v. Rogers, supra, 566, quoting, in turn, St. Amant v. Thompson, 390 U.S. 727, 731 (1968)("Mere errors in judgment are not sufficient to constitute actual malice and a defamatory statement must have been made with an awareness of its probable falsity, as demonstrated by sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."). Merely "failing to investigate alone does not support a finding of actual malice." Campbell v. Citizens for an Honest Government, Inc., 255 F.3d 560, 570 (8th Cir. 2001), citing Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 692 (1989), citing in turn, St. Amant v. Thompson, supra at 731; see also, Price v. Viking Penguin, Inc., 881 F.2d 1426, 1433 (8th Cir. 1989), cert. denied, 493 U.S. 1036 (1990).

Although the presence of malice is generally a fact question, see, Stuempges v. Parke, Davis & Co., supra at 257, Minnesota Courts have held that the question of

whether the evidence is sufficient for a finding of malice can be decided as a matter

of law.  See, <u>Bauer v. State</u>, 511 N.W.2d 447, 450 (Minn. 1994); see also, <u>Harte-</u>

<u>Hanks Communications, Inc. v. Connaughton</u>, supra at 685 ("The question of whether

the evidence in the record in a defamation case is sufficient to support a finding of

actual malice is a question of law." ); <u>Frankson v. Design Space International</u>, 394

N.W.2d 140, 145 (Minn. 1986)(finding that evidence of malice was not sufficient to

give to a Jury); <u>Buchanan v. Minnesota State Dept. of Health</u>, 573 N.W.2d 733, 738

(Minn. App. 1998); <u>Michaelson v. Minn. Mining & Mfg. Co.</u>, 474 N.W.2d 174, 182

(Minn. App. 1991)(affirming Summary Judgment because an employer's letter to a

plaintiff employee's supervisor alleging deficiencies in his job performance did not

establish actual malice).[7]

---

[7]At the Hearing, the Plaintiff alleged that the Defendants' statements and behavior
constituted defamation <u>per se</u>, because the Defendants accused him of either claiming
tax credits in Arkansas to which he was not due, or of defrauding the City by lying
about his residency.  Statements are defamatory <u>per se</u>, and therefore, actionable
without proof of actual damages, if they affect the plaintiff in his business, trade or
office, see, <u>Stuempges v. Parke Davis Co.</u>, 297 N.W.2d 252, 255 (Minn. 1980), and
false accusations of criminal activity are defamatory <u>per se</u>.  See, <u>Becker v. Alloy
Hardsurfacing & Engineering Co.</u>, 401 N.W.2d 655, 661 (Minn. 1987); see also,
<u>Anderson v. Kammeier</u>, 262 N.W.2d 366, 372 (Minn. 1977).

However, even if a statement is defamatory <u>per se</u>, the plaintiff still must
establish that there was publication of a false statement to a third party to succeed in
(continued...)

The Plaintiff alleges that the Individual Defendants acted with actual malice, as they recklessly disregarded the truth at the Council meeting on May 1, 2006, when they accused him of unlawful behavior in maintaining an Arkansas homestead. The Defendants contend that Summary Judgment is appropriate, since the Plaintiff has shown, at most, that the Defendants were negligent in their investigation of the allegations against the Plaintiff, which is insufficient, as a matter of law, to establish malice. In analyzing the Plaintiff's Motion for leave to amend his Complaint in order to add a claim for punitive damages, we considered the Record before us and found that the Plaintiff had failed to show, by clear and convincing evidence, that the Defendants had acted with actual malice. The Plaintiff has failed to present any evidence which alters that view. Of course, under the Summary Judgment standard, the evidence need not be "clear and convincing," but we find that the Plaintiff has failed to raise a genuine issue of material fact on the question of actual malice.

---

[7](...continued)

a defamation action. See, Keuchle v. Life's Companion P.C.A., Inc., 653 N.W.2d 214, 218 (Minn. App. 2002), citing Foley v. WCCO Television, Inc., 449 N.W.2d 497, 500 (Minn. App. 1989). Moreover, the requirement that actual malice be shown in defamation cases involving public officials applies even to statements that would be defamatory per se. See, Hunter v. Hartman, 545 N.W.2d 699, 705 n. 2 (Minn. App. 1996). As we find that the Plaintiff has failed to establish that the Defendants acted with actual malice, we do not further address his claim that any of the alleged statements constituted defamation per se.

At the Hearing, the Plaintiff argued that the Defendants defamed him by accusing him of being a "tax cheat."  Although the Plaintiff has not cited to any passages in the Record, it appears that he is referring to statements by Hedren and Ted Mellby ("Mellby"), who is an attorney under contract with the City, that were made during the Council meeting on May 1, 2006, and quoted in the <u>Pilot-Independent</u> newspaper article dated May 3, 2006.  See, <u>Affidavit of Porten</u>, supra at Exhibit 2.  In that article, Hedren reportedly stated that the Plaintiff received homestead credit on his property in Arkansas in 2004, 2005, and 2006, and Mellby also accused the Plaintiff of maintaining two homesteads in two states in 2004 and 2005, stating "[i]t's on the tax statement * * * [n]o one can have two homesteads at the same time."  <u>Id.</u>

According to that article, Mellby added that "[e]ither Arkansas or Minnesota was getting short-changed," and noted that the Plaintiff "[could not] say that [he] didn't know, and [his] wife was writing the checks."  <u>Id.</u>  The Plaintiff argues that he sold his house in the City, and purchased his home in Arkansas in 2005, and so the statement, that he received the homestead credit in 2004 is categorically false, and that the Individual Defendants were aware that this statement was false at the time that it was made.  Specifically, the Plaintiff alleges that, as a neighbor of the Plaintiff at his former residence in the City, Ciha should have known that the Plaintiff did not sell

this residence until 2005, and so would have known that the Plaintiff was not receiving a homestead credit in Arkansas in 2004.

The Plaintiff has offered the deposition of Ciha, see, <u>Affidavit of Schwie</u>, supra at Exhibit U, Deposition of Ciha, in which Chia testifies that he spoke with the Plaintiff, and that the Plaintiff had told him that he had purchased a home in Arkansas and was selling his house in the City, and that Ciha mentioned his conversation with the Plaintiff to Hedren, in March or April of 2006.  However, at his deposition, Ciha does not provide a date for his conversation with the Plaintiff, or state when he understood that the Plaintiff had initially purchased the residence in Arkansas.  In addition, at his deposition, the Plaintiff stated that, in June of 2005, he told the Defendants that he was selling his residence in the City, and had purchased a property in Arkansas, but he did not testify as to a specific date on which he told the Plaintiffs that he had purchased the Arkansas property.  <u>Id.</u> at Exhibit A, Deposition of Franzwa, pages 44-45.

Moreover, among the Exhibits that the Plaintiff submitted in opposition to the Motion for Summary Judgment is an e-mail dated April 14, 2006, from Elaine Quick ("Quick"), who is the Assessor of Baxter County, Arkansas, to Hedren, that states that "[t]he property of Eugene Franzwa [in Arkansas] has had a homestead credit on the

property **since 2004**." <u>Affidavit of Schwie</u>, at Exhibit I [emphasis added].  The Plaintiff argues that this e-mail does not specifically state that **he** was the owner of the property at the time that it received the homestead credit in 2004.  However, on the Record presented, we have found no evidence from which it can be reasonably inferred that any of the Defendants subjectively believed that the statement, that the Plaintiff owned a homesteaded property in Arkansas in 2004, was likely false, given Quick's e-mail and the Plaintiff's representations that, in 2005, the Individual Defendants were generally aware that he either had purchased, or was planning to purchase, a residence in Arkansas.

The Plaintiff alleges that the Defendants were also aware that the statement, that he received a homestead credit in Arkansas for 2006, was false, but the evidence which was submitted by the Plaintiff similarly does not establish a genuine issue of material fact as to whether any of the Defendants acted with actual malice by allegedly making that assertion.  Specifically, the Plaintiff notes that, on May 2, 2006, which was the day after the Council meeting at which Hedren and Mellby allegedly made the defamatory statements, he sent an e-mail to Quick, in which he asked about the homestead status of the Arkansas property, and on May 3, 2006, Quick e-mailed a reply, in which she stated that "[t]his email is to let you know it was this office's

mistake of giving a homestead for 2005." <u>Affidavit of Schwie</u>, supra at Exhibit Q. Notably, Quick did not attempt to shift the blame, for her County's mistake on the homestead question, to the Defendants.

At his deposition, the Plaintiff explained that he also telephoned Quick on May 2, 2006, and asked her to send him a copy of the 2005 tax assessment for the Arkansas property, which showed that the Plaintiff received a homestead tax credit for 2005, <u>id.</u> at Exhibit A, Deposition of Franzwa, at page 86, and the Plaintiff concedes that, as of May 1, 2006, he had received a homestead tax credit of $300.00 in Baxter County, Arkansas, and that he did not refund that amount until after the Council meeting on May 1, 2006. <u>Id.</u> at pages 94, 173. Given this Record, which is uncontroverted, we find that there are no genuine issues of material fact as to whether the Defendants could have believed that the Plaintiff received the homestead credit in Arkansas in 2006, when the Plaintiff, himself, concedes that Baxter County had his property recorded as homesteaded in May of 2006, and there is no evidence, in this Record, that goes to establish that any of the Defendants believed otherwise.[8]

_____

[8]Although it is not clear from the pleadings, in his Memorandum, the Plaintiff appeared to also be claiming that the act of removing him from the Council was, by itself, defamatory. However, that claim must fail for, under Minnesota law, actions cannot, in themselves, be defamatory. See, <u>Bolton v. Dept. of Human Services</u>, 540

(continued...)

In sum, we find that there is no evidence in the Record before us, that would support a showing of actual malice which is necessary to establish defamation of a public figure and, as a result, we recommend that the Defendants' Motion for Summary Judgment, as to the Plaintiff's defamation claims, be granted.

3.    The Minnesota Open Meeting Law Claim. Finally, the Defendants argue that the Plaintiff's claims, under the Open Meeting Law, Minnesota Statutes Section 13D.01 et seq., should be subject to summary adjudication, as the Defendants' actions did not violate that Statute.

Section 13D.01 establishes that city council meetings must be open to the public, unless they are expressly closed on the record.[9]  Section 13D.06, Subdivision

_____

[8](...continued)
N.W.2d 523, 525 (Minn. 1995)("Minnesota has never recognized defamation by conduct alone"); Landers v. Nat'l R.R. Passenger Corp., 2002 WL 832588 at *1 (D. Minn., April 26, 2002).

[9]Section 13D.05, Subdivision 2, provides as follows:

> A public body shall close one or more meetings for preliminary consideration of allegations or charges against an individual subject to its authority.  If the members conclude that discipline of any nature may be warranted as a result of those specific charges or allegations, further meetings or hearings relating to those specific charges or allegations held after that conclusion is reached must be

(continued...)

- 36 -

1, provides for personal liability, in the form of a civil fine of $300.00, for any person who intentionally violates the Open Meeting law.  Subdivision 4 of that same Section allows a Court to award "reasonable costs, disbursements, and reasonable attorney fees of up to $13,000 to any party," and further clarifies that "[n]o monetary penalties or attorney fees may be awarded against a member of a public body unless the court finds that there was a specific intent to violate this chapter."  See also, Brown v. Cannon Falls Tp., 723 N.W.2d 31, 41-42 (Minn.App. 2006).

In his Complaint, the Plaintiff alleges that the Individual Defendants violated the Open Meeting law by meeting privately to discuss the Plaintiff's removal from office, and by failing to hold those meetings at a publicly noticed date and time.[10] See, Complaint, supra at ¶¶72-74.  Meetings subject to the requirements of the Open Meeting Law "are those gatherings of a quorum or more of the governing body, or a quorum of a committee, subcommittee, board, department, or commission thereof, at

---

[9](...continued)
open.
Minnesota Statutes Section 13D.05, Subdivision 2.

[10]In his Memorandum, Docket No. 32, at p. 28, the Plaintiff clarifies that his sole Open Meeting claim is premised on those alleged private meetings, and not on the failure of the Council to place a notice regarding the residence issue on any meeting agenda forms.

which members discuss, decide, or receive information as a group on issues relating to the official business of that governing body." Moberg v. Indep. Sch. Dist. No. 281, 336 N.W.2d 510, 518 (Minn. 1983).

Minnesota Statutes Section 412.191, Subdivision 1, defines a "quorum" as a majority of the members of a city council, which includes the mayor, the clerk, and the city council members. "Chance or social gatherings" are exempt from the Open Meeting law requirement, although a quorum may not assemble under the pretense of a social gathering. Id., quoting St. Cloud Newspapers, Inc. v. Dist. 742 Community Schools, supra at 7. In Moberg, the Court went on to note that each case must be evaluated individually, as it would be possible for members of a council, or of a board, to conduct serial secret meetings of a number of members insufficient to constitute a quorum for the purpose of avoiding public scrutiny. Id. However, it is generally not a violation of the Open Meeting law for a group of public officials to gather when they lack the capacity to actually transact business. See, Sovereign v. Dunn, 498 N.W.2d 62, 66 (Minn. App. 1993), citing Minnesota Daily v. Univ. of Minn., 432 N.W.2d 189, 193 (Minn. 1988).

The facts, as alleged by the Plaintiff, do not rise to the level of a concerted attempt to hold serial meetings in violation of the Open Meeting law. The Plaintiff

alleges that Council member Ciha approached Mayor Hedren, in March of 2006, and mentioned his belief that the Plaintiff might not be a resident of the City.   See, Affidavit of Schwie, supra at Exhibit R, Deposition of Hedren, at page 8.   After speaking with Mellby, who is not a Council member, Hedren then spoke with the City Clerk, Jody Knapp, to see if she could obtain information, from Arkansas, concerning the Plaintiff's residency status.   Id. at pages 15-16.   In April of 2006, Hedren also mentioned his concerns, as to the Plaintiff's residency status, to Council member Johnston.   Id. at pages 45-46; see also, Affidavit of Schwie, supra at Exhibit T, Deposition of Johnston, at pages 9-10.

As a consequence, the Plaintiff's claim is that, over the course of two (2) months, Hedren mentioned the potential issue of the Plaintiff's residency to two (2) other City Council members, and to the City Clerk, and discussed the implications of a Council member's residence status with the City Attorney.   However, on the Record presented, there is no evidence that a "group consensus" was formed, during those conversations, see, Moberg v. Indep. Sch. Dist. No. 281, supra at 519, or that anything was discussed, other than the necessity to raise the question of the Plaintiff's residency at the next scheduled City Council meeting.

- 39 -

While the Plaintiff was clearly dismayed at being confronted, at the Council meeting of May 1, 2006, with allegations that he had homesteaded in Arkansas, and therefore, was not entitled to retain his position on the Council, the Individual Defendants were entitled to investigate the Plaintiff's residency status, and to raise those concerns, for the first time, at an open Council meeting. The Record establishes that the issue of the Plaintiff's residency was raised at the meeting of May 1, 2006, for public discussion, and that the Plaintiff was permitted to advocate his position at that time, and that the decision to suspend the Plaintiff's membership on the Council was made at that time. Moreover, the Plaintiff was given thirty (30) days, after the meeting on May 1, 2006, to submit proof of his City residence, which he did at the next Council meeting, which was held on May 18, 2006, and which resulted in his reappointment to a position on the Council.

Having found that there are no genuine issues of material fact, as to the Plaintiff's Open Meeting law claim, we recommend that the Defendants' Motion for Summary Judgment, as to that claim, be granted.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendants' Motion for Summary Judgment [Docket No. 24] be granted.

Dated:  May 28, 2008                           *s/Raymond L. Erickson*
                                               Raymond L. Erickson
                                               CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 13, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 13, 2008,** unless all interested parties

- 41 -

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.